UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CMG WORLDWIDE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-00928-RLY-DKL |
| | ) | |
| JAN GLASER, an individual, TATYANA KHOMYAKOVA, an individual, TATYANA DESIGNS, INC., and TATYANA LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' REQUEST FOR RULE 11 SANCTIONS**

On January 9, 2015, the court dismissed Plaintiff CMG Worldwide, Inc.'s, Complaint for failure to state a claim upon which relief can be granted. Count III alleged Defendants violated Section 10(b) under the Securities and Exchange Act of 1934 ("Securities Act") and Rule 10b-5; and Count IV alleged Defendants violated Section 20(a) of the Act. Having finally adjudicated this action, the court is now required, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), to make "specific findings regarding compliance by each party . . . with each requirement" of Rule 11." 15 U.S.C. § 78u-4(c)(1).

**I.  Background**

CMG is a celebrity and brand licensing agency that, for purposes of this case, serves as the agent of Bettie Page, LLC (or "BPL") and the Estate of Bettie Davis. CMG

1

granted Defendants a license to use the Bettie Page Intellectual Property for use in connection with their stores, clothing lines, and the like.

Stop Staring! Designs was a competitor of Defendants, and, on March 24, 2009, filed a lawsuit for trademark and trade dress infringement against them in the Central District of California. In November 2009, Defendants allegedly contacted CMG and asked CMG to sue Stop Staring! Designs as a means to deplete Stop Staring! Designs' resources. As an incentive, Defendants offered to pay CMG's attorney's fees and costs associated with the lawsuit. CMG agreed, but CMG Brands, LLC filed the lawsuit. CMG Brands lost miserably. Defendants failed to pay CMG's attorney's fees and costs; consequently, CMG terminated its license agreement(s) with Defendants and filed this action to recover its attorney's fees and costs from the Defendants.

CMG's Securities Act claims are difficult to understand. Count III contains the following conclusory allegations:

> 48. Defendant, JG [Jan Glaser], with scienter, directly or indirectly:
>
>     a. employed devices, schemes, or artifices to defraud;
>
>     b. made untrue statements of material facts or omitted to state material facts necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; or
>
>     c. engaged in acts, practices, or courses of business which operator would operate as a fraud or deceit upon other persons, including purchasers or sellers of securities.
>
> 49. As a result of the foregoing, Defendants JG and TK [Tatyana Khomyakova] have violated Section 10(b) of the Exchange Act of 1934 (specifically, 15 U.S.C. § 78j(b)).

A private damages action under Rule 10b-5 is limited to actual purchasers and sellers of securities. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463-64 (2d Cir. 1952), *cert denied*, 343 U.S. 956 (1952); *Eason v. General Motors Acceptance Corp.*, 490 F.2d 654, 657 (7th Cir. 1973) (noting the "purchaser-seller" requirement is frequently described as a standing requirement). Despite this well-settled law, CMG's attorney filed 10b-5 claims against Defendants even though CMG neither purchased nor sold the relevant stock. In CMG's response in opposition to Defendants' motion to dismiss, CMG attempted to clarify Count III by explaining that "it was harmed by Defendants' failure to disclose the *obligation of payment* to CMG to indemnify CMG against the award in the Lawsuit was a material failure and that failure materially altered the [Tatyana Designs, Inc. ("TDI")] stock price." (Filing No. 13 at 16) (emphasis added).

The only failure to disclose mentioned in CMG's Complaint was found in paragraphs 23 and 24, wherein CMG alleged that "CMG, on behalf of [Bettie Page LLC], terminated the various license agreements between [Bettie Page LLC] and Defendants," and "in violation of SEC Rules, Defendants have yet to publically, in required SEC filings, disclose the termination of their rights in and to the Page Intellectual Property." (Compl. ¶¶ 23 and 24). The court found that the failure to disclose, as alleged in the Complaint, had nothing to do with an obligation of payment; instead, the failure to disclose related to information CMG contends was required to be filed with the SEC. In addition, the evidence submitted by Defendants established that TDI was not required to disclose that information because TDI is not registered with the SEC and trades on the

3

OTC Pink Market. The court further found that, even if it were to consider CMG's argument regarding Defendants' alleged failure to disclose an *obligation of payment*, CMG failed to link that obligation to the stock price of TDI, and, assuming there was a material change in that stock price, CMG failed to explain how that stock price harmed it. The court, therefore, granted Defendants' motion to dismiss Count III.

In Count IV, CMG alleged a claim under Section 20(a) of the Securities and Exchange Act against Glaser and Khomyakova. In order to state a Section 20(a) claim, CMG was required to show a primary securities violation. *766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*, 249 F. Supp. 2d 974, 983 (N.D. Ill. 2003) (quoting *Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (7th Cir. 1992)). Because CMG failed to allege a plausible Rule 10b-5 claim, Count IV was likewise dismissed.

## II. Discussion

### A. Rule 11 Sanctions

Federal Rule of Civil Procedure 11 provides:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). In *Szabo Food Service, Inc. v. Canteen Corp.,* Judge Easterbrook explained the criteria or "strands" of Rule 11:

> The Rule contains several strands. There must be "reasonable inquiry" into both fact and law; there must be good faith (that is, the paper may not be interposed "to harass"); the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and the lawyer must believe that the complaint is "well grounded in fact". The attorney filing the complaint or other paper must satisfy all four requirements.

823 F.2d 1073, 1080 (7th Cir. 1987).

CMG raises four arguments in opposition to Defendants' Rule 11 motion. The court will address each in turn below.

### 1. The PSLRA

First, CMG argues that the PSLRA only applies to class action lawsuits; therefore, the court need not engage in a mandatory sanctions inquiry. Congress enacted the PSLRA "[a]s a check against abusive litigation by private parties." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). One of the control measures Congress included in the PSLRA are heightened pleading requirements. *Id*. "The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Id*. (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976)). In addition, the PSLRA "'mandates imposition of sanctions for frivolous

litigation.'" *Thompson v. Relationserve Media, Inc.*, 610 F.3d 628, 636 (11th Cir. 2010) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006)).

Section 78u-4 of Title 15, entitled "Private securities litigation," consists of three subsections: subsection (a) is entitled "Private class actions"; subsection (b) is entitled "Requirements for securities fraud actions"; and subsection (c) is entitled "Sanctions for abusive litigation." Thus, subsection (a) stands on equal footing to subsections (b) and (c). Merely because subsection (a) came first does not alter the court's conclusion. In addition, subsections (b) and (c) apply to "*any private action* arising under this title [15 U.S.C. §§ 78a *et seq*.]," and not just to "any private class action arising under this title." This understanding of the PSLRA is shared by appellate and district courts from around the country. *See Inter-County Resources, Inc. v. Medical Resources, Inc.*, 49 F.Supp.2d 682, 684 (S.D. N.Y. 1999) ("[T]here is no question that [the PSLRA] extends to all 10b-5 claims, and not merely to class actions."); *Ledford v. Peeples*, 657 F.3d 1263, 1263 (11th Cir. 2011) (affirming district court's denial of Rule 11 sanctions in PSLRA non-class action); *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152-154 (2d Cir. 2009) (applying PSLRA to non-class action); *Avant-Garde, LLC v. Mountain Spa Properties, LLC*, No. CV 10-01499-PHX-NVW, 2011 WL 6223936, at *1 (D. Ariz. Oct. 25, 2011) (applying PSLRA in non-class action); *Louros v. Kreicas*, No. 03 Civ. 1514 (LAK), 2003 WL 22353979 (S.D.N.Y. Oct. 15, 2003) (denying defendant's request for Rule 11 sanctions in PSLRA non-class action). The court therefore finds that the PSLRA does not apply only to private class action lawsuits.

    **2.**     **Safe Harbor Provision**

Next, CMG argues that Defendants failed to comply with Rule 11's "safe harbor" provision because its first request for Rule 11 sanctions appeared in Defendants' reply in support of Defendants' motion to dismiss. According to CMG, had Defendants given it notice of its intent to file sanctions against it pursuant to the safe harbor provision of Rule 11, CMG "would have had the necessary 21-day period in which to conduct further review, research, and investigation into their beliefs as to Counts III and IV and to withdraw the same if upon said investigation it was determined that Defendants' contentions as to Counts III and IV were correct." By failing to abide by the safe harbor provision, CMG argues, Defendants' request for Rule 11 sanctions must be denied.

The safe harbor provision provides that, after a motion for sanctions is served on the nonmoving party, it "must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service" of the motion. Fed. R. Civ. P. 11(c)(2). The safe harbor provision does not apply to the court's Rule 11 analysis, as the PSLRA *mandates* a Rule 11 finding. *City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 761 (7th Cir. 2013) (quoting the PSLRA, 15 U.S.C. § 78u-4(c), and noting that it is a district judge's duty to determine whether to impose Rule 11 sanctions); *ATSI Comm'ns*, 579 F.3d at 152 ("[C]onsideration of sanctions in the PSLRA context can never be *sua sponte* and can never come as a surprise, because Congress, not the court, has prompted and *mandated* a Rule 11 finding" "upon final adjudication of the action.") (emphasis in original). Therefore, Defendants were not required to comply with the safe harbor provision. Indeed, "it would have been [the court's duty] "upon final adjudication of the

7

action" "to determine whether or not to impose sanctions even if the [D]efendants had not invited [the court's] attention to it." *City of Livonia*, 711 F.3d at 761. The court therefore finds that Defendants' failure to comply with Rule 11's safe harbor provision is irrelevant to the court's Rule 11 analysis.

### 3. Subjective Belief

Citing *Mars Steel Corp. v. Cont'l Bank, N.A.*, 880 F.2d 928 (7th Cir. 1989), CMG argues the court must make a finding that its attorney subjectively believed that what he stated in the pleading or motion "is warranted by existing law . . . and that it is not interposed for any improper purpose." CMG is correct; however, there is also an objective component, as the *Mars* Court explained:

> [Rule 11] has both a subjective and an objective component. A paper "interposed for any improper purpose" is sanctionable whether or not it is supported by the facts and the law, and no matter how careful the pre-filing investigation. The objective component is that a paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make "reasonable inquiry" beforehand . . . . "'An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating.'" *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986).

*Id.* at 931-32. In other words, "it is not enough that the attorneys' subjective belief and purpose are innocent; it is also necessary that such mental state be based upon reasonable inquiry, objectively analyzed, into the basis for the facts alleged and into the law." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993) (interpreting *Mars*). *See also Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994) ("We determine whether a party's conduct was imposed for an improper purpose by an objective standard."); *Federal Deposit Ins. Corp. v. Tekfen*

8

*Const. and Installation Co., Inc.*, 847 F.2d 440, 442 (7th Cir. 1988) (The test "is one of objective reasonableness under all the circumstances of the case.").

CMG's attorney filed an affidavit, stating that neither he nor CMG have specialized training and/or experience with Securities Act claims, and that neither he nor CMG have ever been sanctioned. (Affidavit of Theodore J. Minch ¶¶ 5-6). Noticeably absent from the affidavit is testimony from CMG's attorney stating that he researched Securities Act case law – Rule 10b-5 in particular – prior to filing Counts III and IV, and reasonably determined that Counts III and IV were "warranted by existing law." Fed. R. Civ. P. 11(b)(2). It appears he did not; he cited no case law in opposition to Defendants' motion to dismiss Counts III and IV. (Filing No. 13 at 16). Basic research on the issue of standing to assert a Rule 10b-5 claim would have revealed to CMG's attorney that his client (CMG) had to be a "purchaser or seller" of a security before bringing those claims. One need not have expertise in securities law to make that determination. *See Blue Chip Stamps*, 421 U.S. at 731; *Birnbaum*, 193 F.2d at 463-64; *Eason*, 490 F.2d at 657 (noting the "purchaser-seller" requirement is frequently described as a standing requirement).

### 4. Extension, Modification, Reversal of Existing Law

Lastly, CMG appears to argue that Counts III and IV are "warranted by . . . a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). In particular, CMG states that in determining whether to bring Counts III and IV, both CMG and its attorney considered the dissenting opinion of Justice Blackmun in *Blue Chip Stamps*, *supra.*, which, they say, stands for the following proposition:

9

> [T]he real test in determining the viability of a private Rule 10b-5 claim is not whether CMG had purchased or sold Defendants' securities but whether there was a logical nexus between the alleged fraud (here, the perceived failure to report the existence of the litigation and, later, the termination of defendants' license agreements for the use of Bettie Page) and the (per) [sic] price of Defendants' stock.

(Filing No. 21 at 11). To the extent CMG's interpretation of Justice Blackmun's dissent in *Blue Chip Stamps* is correct, a forty-year-old dissenting opinion is of no precedential value, particularly where, as here, *Blue Chips Stamps* remains the seminal case cited for the *purchaser-seller requirement*.

Even considering CMG's latest argument, the only harm to CMG arose from its *own decision* to terminate the license agreements with Defendants, thereby resulting in a loss of royalty payments to CMG. Royalty payments are not securities. *See* 15 U.S.C. § 77b(a)(1) ("The term 'security' means any note, stock, treasury stock, security future, security-based swap, bond debenture, . . . , or, in general, any interest or instrument commonly known as a 'security. . . .'"). The court therefore finds that CMG's argument fails to convince the court that Counts III and IV were brought as a nonfrivolous extension, modification, or reversal of the law.

In conclusion, the court finds CMG's attorney failed to conduct a reasonable investigation into the factual and legal bases for Counts III and IV. Had CMG's attorney done so, he would have realized that the 10b-5 claims were not objectively warranted by existing law or a good faith argument for the extension or modification of the law. The court further finds that sanctions should not be imposed on CMG. CMG, as a represented party, did not sign either the Complaint or the response in opposition to Defendants'

motion to dismiss, and is not expected to research the law prior to filing documents with the court. In addition, Rule 11 frowns on the imposition of monetary sanctions against represented parties. *See* 1993 Amendment ("Sanctions that involve monetary awards (such as a fine or an award of attorney's fees) may not be imposed on a represented party for causing a violation of subdivision (b)(2), involving frivolous contentions of law.").

### B. Monetary Sanctions

Under the PSLRA, the presumptive sanction for the "substantial failure of any complaint" to comply with Rule 11(b) is "an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C. § 78u-4(C)(3)(A). Defendants have not submitted any billing records establishing the fees and costs it has incurred in defending this case. Instead, they ask that the sum be determined in a subsequent hearing. A hearing is not necessary; a written submission is sufficient.

## III. Conclusion

The record presents sufficient evidence for the imposition of Rule 11 monetary sanctions against CMG's attorney. Defendants are **ORDERED** to file a written memorandum in support of an award of attorneys' fees and costs, with designated evidence, on or before April 2, 2015. CMG's response is due April 16, 2015, and Defendants' reply is due April 30, 2015.

**SO ORDERED** this 13th day of March 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.